and we're going to move to the next one. Warrior Met Coal Mining versus United Mine Workers of America. Your Honor, I may please the court. I want to make sure everybody, Mr. Rocco, I try to make sure within our Zoom world that everything is set up, everybody's on board, everyone's got their feet before I call on you and so I appreciate your enthusiasm. You may begin. Thank you, Your Honor. I may please the court. My name is Richard Rocco for the appellants. This court is confronted once again with a case where a party to an arbitration agreement seeks, as the court observed in Wiregrass Metal Trades Council, to snatch a court victory from the jaws of an arbitration defeat. This court has on several occasions taught that such an outcome is reserved only for the most unusual of circumstances and this case is not one of those unusual circumstances. This case is about an arbitrator applying the law of the shop and a just cause provision to conclude that Warrior Met lacked just cause to discharge an employee named Bradley Nix under the attendance control policy. Mr. Rocco, let me ask you a question, please. First, let me tell you that I am sympathetic to your general position on how we're supposed to review arbitration rulings and I was a member of the panel in Wiregrass and I thought that that case was decided correctly, obviously, but the district court relied heavily, if not exclusively, on our prior decision in Warrior and Gulf from 1993 and let me walk you through at least a couple of the what I think are similarities and then have you tell me why you a provision that said once you had a second positive drug test, the employee was subject to discharge, right? That's correct. Immediate discharge. I'm sorry? Immediate discharge. Okay, immediate discharge. Thank you for the help. This case has a provision that says that for a fourth strike, right? So, I presume that you would agree that both of those provisions in the two cases allow for at least allow for discharge if the violation is committed, right? Well, with one proviso, your honor, that the contract says a fourth strike equals discharge, not just solely a fourth. Okay, fine. I take that point. So, but if you have the event described in the collective bargaining agreement in both Warrior and Gulf in this case, you could discharge the employee. You would agree that both collective bargaining agreements allowed for that remedy, right? Well, if you look at the plain document itself, that is a correct reading. Okay. Wait, wait. I'm going to let you go all out and explain, but here are the other points of comparison. According to what the district court thought, both collective bargaining agreements also had a provision in a separate article that said that any termination could only be for just cause, right? That's correct. And in both cases, according to what the district court believed, the district court in Warrior and Gulf, I mean, excuse me, the arbitrator in Warrior and Gulf and the arbitrator here, use the just cause provision to decide whether or not discharge was appropriate under the circumstances, right? That was part of the arbitrator's justification. Okay. So tell me why it is that you believe that if Warrior and Gulf also seems to say to me, the text of Warrior and Gulf, that if you have a punishment that is baked into the collective bargaining agreements, then that is in and of itself just cause. Do you agree with that reading of Warrior and Gulf or not? In the reading of Warrior and Gulf, that's correct. But we don't think that that reading applies to the facts of this case. Okay. Tell me why, please. And the reason why is because if you look at Warrior and Gulf navigation decided by the Supreme Court 62 years ago, in that case, the court said that the labor arbitrator's source of law is not confined to the express provisions of the contract as the industrial common law, which is known as the shop, the law of the shop, the practices of the industry and the practices of the shop is equally a part of the collective bargaining agreement, although not expressed in it. The arbitrator here relied on that kind of extrinsic evidence of parties, dealings, and that did not happen in our earlier Warrior case, right? That is correct, Your Honor. And it's stronger than just extrinsic evidence. And that was one of the differences in Wiregrass too, right? Correct. And that is that what you have here is and what the arbitrator found, and this is really in some ways, the source of the district court's error here, is that the arbitrator found that the practice and the law of the shop is that first, the employer does not always assess the penalty or the sanction that's listed in paragraph one of section G of article 15. And second, that the employer when considering the question of misconduct itself, which is how the arbitrator interpreted paragraph eight of article 15, section G, that the central question there is one of misconduct. And that's something that the employer in its brief at page 28 of its brief concedes is the central question of paragraph eight. We'll look at paragraph eight. One of the concerns I have about paragraph eight is it says the only issue under this article 15, section G, subsection G, subject to article 16. But it doesn't say subject to article 17. And article 17 says no employee covered by this That is correct. And what's unique about that is that article 17 has its own arbitration provision in it. It calls for immediate arbitration, which though in some sense relies And the parties here conducted this arbitration under that article. There's no dispute. They were operating under that article. Isn't that right? There is no dispute and the arbitrator finds that they were doing immediate arbitration. And in fact, to support that is that the arbitrator doesn't cite article 16 in his opinion. His award only looks at article 17 and he decides the question of just cause under article 17. But to answer your question about paragraph Mr. Rocco, I'm sorry. Excuse me? I want to ask you one more question before your time runs out. I'm sorry. And I'm sorry for interrupting you. But How do you think that applying the law of the shop here is different from what the arbitrator did in Warrior and Gulf in analyzing the employer's decision to ask the employee to take a third drug test? And to mislead the employee? You cut out a little bit there, your honor. So I apologize. But if I understand the question Here, you say that the arbitrator was applying the law of the shop and the way that the employer was assessing misconduct and applying the discipline provisions, right? That is correct. And in Warrior and Gulf, what the arbitrator did was focus on what the employer had done, which was asked the employee to take a third drug test while everyone was waiting for the results of the second test. And that it had sort of misled the employee into thinking that if he passed the third drug test, the second one would be forgiven. How do you think that there's a difference between those two scenarios? Well, because I think in that in the difference there is that there's simply no practice, right? That's sort of like an individualized issue here. What the arbitrator found was an established practice of considering mitigating circumstances when assessing not only whether somebody should the sanction called for under the attendance policy, which is paragraph one, but also the question of misconduct. And he concluded that the just cause provision required him to look at mitigating circumstances in order to decide whether the lateness at issue here rose to the level of a violation of the policy. So the evidence in this case is certainly much stronger about the establishment of a practice which constituted the law of the shop. I see that my time has expired. Do you feel like you've finished your answer? If you have, then we'll turn it over to Mr. Bethany. Do you, Mr. Rocco, do you feel like you finished your answer? Yes, your honor. Part of my difficulty is that my... Yes, your honor. Your audio must be having a little bit of technical difficulties. I understand. It's the world we live in. Hopefully we're moving beyond it soon. Mr. Bethany. Yes, please, your court. I'm Brant Smith-Amy. I represent lawyer Matt Cole. I'm sympathetic like Jordan. An arbitrator's reward is entitled to that. The judicial review is, and it should be, extremely limited. But where an arbitrator... It's among the narrowest known to law, right? I completely agree. And the sole question for us is whether the arbitrator even arguably interpreted the party's contract, not whether he got it right, right? I agree. But this court has made clear in its precedent that it's obligated to vacate arbitration awards that are irrational, that don't draw their essence from the CDA, or that exceed the arbitrator's express authority, that fail to conform to the terms of the contract. The problem for me is that that G clause does not, makes no reference to Article 17. 17 says no employee can be discharged except for just cause. The arbitrator here relied on the law of the shop, the party's course of dealings in a way that did not happen in our earlier lawyer case. And it seems to me to take this case out of that case, and more in line with that this falls within the rule of arguable interpretation. What am I missing? Well, I believe what you're missing, Your Honors, is the clear and expressed language that the arbitrator's authority is limited to whether the absence that resulted in that strike actually occurred. I'm understanding- Yeah, but that doesn't make, it makes no reference to Article 17. Right. And Article 17 is the just cause provision, Your Honor. And the parties were operating under that, that article, right? I mean, this arbitration occurred under that article. There's no dispute about that. I believe there is a dispute about that. I believe that the parties, that the parties carved out this control policy from other types of misconduct that would be subject to the just cause procedures. They specifically included, much like in Warrior and Guard, a crafted, specific policy that spells out what the penalty is for a particular strike. In this case, as Judge Jordan noted, strike four equals discharge. That's not ambiguous. It's not by virtue of the fact that Article 17 refers to just cause. The arbitrator's authority is plainly limited to whether or not the absence that resulted in a strike actually occurred because- Mr. Matheny, didn't, didn't you, didn't the employer here use the procedures from Article 17? That is, that there was notice given that the employee was suspended with intent to discharge and given written notice about the reasons, and then there was an immediate arbitration under these procedures in 17? The procedures that are used for the actual arbitration process are the ones that are used to trigger arbitration between Warrior Med and the union. But like- But that's in 17. The procedures all used were in 17, right? But there are, but there are also procedures in 16 that are comparable. They may be comparable, but there was no dispute, as I understood this record, that the parties proceeded under 17. Well, the parties proceed to arbitration under the terms of the collective bargaining agreement, and those processes are similar. And so whether the, you know, whether the arbitrator then constructed his ruling based on Article 17 is exactly the point that we're trying to make. The arbitrator was constrained in his authority in Article 15 because we have carved out from these discharge procedures, from this just cause language that exists in Article 17, an attendance control policy that spells out exactly what just cause is. Timothy, I think, and I don't know whether this argument will win the day for you in my mind or not, but an answer is that Warrior, our decision in Warrior and Gulf didn't have a limiting provision like this case has. Nevertheless, the court said you couldn't apply the just cause provision. Well, that's exactly right. And it's not just Wiregrass Metals, Your Honor. Wiregrass Metals is a perfect example. In Wiregrass Metals, the court actually specifically says that an arbitrator goes beyond his authority when he imposes a remedy that the collective bargaining agreement doesn't allow. And here that's exactly right. Well, I mean, I disagree with you there. It seems to me that if I were deciding, I speak only for myself, of course, if I were deciding this case on a blank slate, given the deference that we have to give to arbitrators, I would land exactly where Chief Judge Pryor seems to be ready to land. So I don't think this is a case of the arbitrator doing something that he wasn't entitled to do. My concern is whether or not Warrior and Gulf, because of our prior precedent rule, requires a different result in this circumstance. I think that for me, I think that's the only thing you can hang your hat on. And really, the only thing the district court relied on is the binding nature of Warrior and Gulf. Right. And I completely agree with that, and in fact, in the cases that the union sites that attempt to distinguish Warrior and Gulf, all of those contain language that validates the approach that the district court took here. It looked at the language that exists in IMC Agricode that references Warrior and Gulf and attempts to distinguish it. It's an unobjectionable principle that an employer can expect that certain identified types of employee conduct always provide just cause for discharge. Of course, in Wiregrass, we later said that even where the agreement appears to be unambiguous, where the arbitrator relies on a course of dealings between the parties, it brings it within the arguable interpretation rule. And that certainly happened here. It certainly happened here if you set the premise that the arbitrator had the authority to do that in the first place. And so we never suggested in Wiregrass that an arbitrator doesn't have that authority. Where would that come from? Well, that authority comes from the collective bargaining agreement. And our collective bargaining agreement's term limits the authority that the arbitrator has to challenge the discretion of the employer on what a fourth strike equals. And, you know, you're talking about past, excuse me, extrinsic evidence that the past practices of the employer. It seems to me that at best, the collective bargaining agreement is ambiguous about whether or not that provision that says you're limited to deciding whether or not the conduct occurred applies to Article 17 in addition to Article 16. And if it's ambiguous, then the arbitrators got the ability to figure out that ambiguity. Again, I think if you, if you, for me only, I don't, I don't, I can only speak for myself. If you can't convince me that Warrior and Gulf binds, then you're going to lose this case. Warrior and Gulf binds because the facts in Warrior and Gulf are not even as favorable to the employer as the facts here. In Warrior and Gulf, there is a policy that's written into the collective bargaining agreement that provides for specific penalties for a drug testing violation. When that violation occurs, the Warrior and Gulf court concludes that it is not empowered to, or the arbitrator was not empowered to go through what the parties had already described as a penalty for that misconduct. Here we have the exact same analysis because our attendance control policy that we carved out of all of the other types of misconduct to occur on, you know, at the shop, under your metal, we carved that out and we said, this is the penalty for strike four. And we had a discretion as the employer to determine that. We're really having problems hearing you. I don't, you might want to move a little closer to your mic or something because you're kind of in and out. I apologize. Is that better? Yes. Okay. I think I'm one of my binders sitting on top of the microphone. I apologize. So the carve out that specifically states that strike four equals discharge is comparable to, and stronger than, even the language that existed in Warrior and Gulf, because there's, it's not ambiguous. It might not be elegant. It might not be stylish. But what else could strike four equals discharge mean? And to consider extrinsic- Well, it makes, it's not immediate discharge as it was in Warrior and Gulf. And it makes no reference to Article 17. And there's evidence, of course, of dealings here that the arbitrator relies on, which was not an issue in Warrior and Gulf. Why doesn't all of that easily take this out of Warrior and Gulf? Well, first of all, the dealings that are not referenced in Warrior and Gulf, that are referenced here, presuppose that the employer doesn't have the authority, the discretion, to determine what the appropriate penalty should be. The courts have talked about, and in fact, I believe it's the IMC-Agricultural Code case that talks about conferring on the employer the discretion when it states what the penalty will be for a particular type of misconduct. It doesn't require an obligation. And, you know, we can imagine a scenario where the exact opposite situation would occur. And strike three, there was a scenario where an employee was absent on a day that the employer had made clear, we really need you today. This is an important workday. We really need you here. And he doesn't conclude that strike three equals discharge rather than strike four. We wouldn't be sitting here with the union arguing that term is in any way ambiguous if we imposed a more severe penalty, a more stringent penalty than the one that the contract authorized. Council, it seems to me one way this case is different from Warrior and Gulf is as follows. It's actually the only issue clause that refers and applies only in Article 16. That, it seems to me, actually cuts against the company because it applies only in Article 16 arbitration, and it does not apply in Article 17, such that it seems to me that's one way that this case is different from and more favorable to the employee. I understand your point, Judge Anderson, but I disagree with the premise because Article 15, the attendance control policy, is itself specifically carved out from the discharge procedures of Article 17. Just clause is not the issue. Where is that? There's no reference to Article 17. It isn't carved out from it. Where does it carve it out? Article 15, the attendance control policy, is carved out in this conduct. It is specifically identified in the Selected Bargaining Agreement differently than all of the types of conduct that are subject to Article 17. The problem is you've got various sanctions for attendance violations, some of which could be arbitrated under Article 16. For example, a verbal warning, a written warning, a suspension, a discharge, it seems to me, is taken out of that. There's an entirely separate article governing that. The only issue clause, as Judge Anderson points out, does not refer to it. It only refers to 16. That's part of what creates the ambiguity to me. Well, regardless, in the time that I have left, regardless of whether the court concludes that this Article 15 limitation on the arbitrator's authority doesn't reference Article 17, what it does do, like Warrior Engulf, is dictates specifically what the penalty should be for attendance violation. Like Warrior Engulf, it recognizes that the arbitrator, should recognize that the arbitrator has no authority to impose different discipline, and in particular, a different remedy. And that's a critical point. The remedy is imposed about nowhere in Article 15. Let me ask you this, Mr. Matheny. I just want to make sure you agree with this point, and that is, let's say that it had been a suspension, the third step in the attendance policy, progressive discipline, right, under Article 15, and that there had been an arbitration about that. The arbitration there would have been under 16, not 17, right? The procedures that would have been used would have been under Article 16, that are comparable to those that are used under Article 17. Yeah, but it would have been, that's where it would have been. This was under 17, but in that event, it would have been under 16, right? Okay. Anything else? Unless there are no further questions, I'm done. Thank you. Please tell Mr. Ramey, we did make every effort to reschedule this argument, and I appreciate the fact that Mr. Rocco, too, was, as I understand it, trying to reschedule the argument. There's just a limit to how far we can keep going in trying to reschedule and balance all of our calendars, and I hope he's feeling better. I understand. Thank you, Your Honor. Mr. Rocco. Thank you, Your Honor. To address Judge Jordan's issue, and I think it's been addressed already in the argument as to if we've gone through different arguments in this case, but Warrior and Gulf is different, Judge Jordan, because in that case, the court did not address, aside from the other issues about Article 17, in that case, the court was not confronted with the shop case. And if we follow the Warrior and Gulf and take seriously the Warrior and Gulf Supreme Court decision in 1960, that practices in the law of the shop are just as much a source of law that an arbitrator can draw on, then it's not clear that having a fourth strike always leads to termination. Let's look at it this way. Let's say we think that the agreement is clear in its terms. After Warrior and Gulf, this court in Wiregrass said, notwithstanding what appears to be a clear provision, if past practices of the parties is considered by the arbitrator, that our earlier precedent? Yes, I agree with that, Judge Breyer, that because of the presence of this past practice, and such past practice not being an issue in the first Warrior and Gulf case, it's just simply not applicable. Let me ask you this question. I know that our decisions, the 11th Circuit decision and Warrior and Gulf did not refer to any past practice. I have not looked at the arbitrator's decision in that case. Did the arbitrator, in fact, not look at past practice? Your Honor, I have not seen that arbitration award either. I think that in that case, though, the way the court describes what the arbitrator did was, in a sense, dispense their own sense of industrial justice. They didn't ground their decision on anything in the contract or in past practice. Here, different from that, in this case, the arbitrator clearly grounds his decision not only on Article 17, which is the just cause provision, but on the past practice, which is the law of the shop. It may well be that it's not really relevant what the arbitrator, in fact, did in Warrior and Gulf. What is relevant is what our panel perceived it as doing. To the extent that that case is precedent, we have to go by what the panel perceived it as, perhaps, rather than what it actually was. Here's the language from Warrior and Gulf, from the panel. The agreement says that an employee who tests positive a second time is subject to immediate discharge. This express language gives management the complete discretion to fire an employee. Once Marcus, the arbitrator, had found that, as a matter of fact, Files tested positive for drugs a second time, these express terms required Marcus, the arbitrator, to uphold management's decision. For whatever it's worth, that's the language from the panel decision. But the difference here, Your Honor, is that, again, the past practice becomes the law of the shop, and it is just as valid as the written agreement that you find here. I know, but why is that different from considering, as the arbitrator did in Warrior and Gulf, management's behavior as to the particular employee who was going to be fired? Why couldn't that be taken into account, too? That the employer, according to the arbitrator, was trying to have it both ways. I don't know. You've tried very hard to answer, and I think you've answered my question, so I don't want to keep harping on the same theme. Thank you. Thank you. Do you have anything else, Mr. Rocco? No, Your Honor. Okay, I think we understand your case. We appreciate both of you presenting this morning.